IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>T.J. ENTERPRISES & ACOUSTICAL, INC.; GURULE PROPERTIES INCORPORATED d/b/a GURULE PROPERTIES, INC.; LINDA GURULE a/k/a LINDA LEE ROACH; RDLC MANAGEMENT; STATE OF UTAH, TAX COMMISSION; STATE OF UTAH, DEPARTMENT OF WORKFORCE SERVICES; SALT LAKE COUNTY, UTAH; WORKERS COMPENSATION FUND OF UTAH; CERTIFIED REPROGRAPHICS, INC.; CHEKLINE, INC. d/b/a CHECK MAX; NEW HAMPSHIRE INSURANCE COMPANY, a member company of AMERICAN INTERNATIONAL GROUP, INC.; and SAVAGE SCAFFOLD & EQUIPMENT, INC.,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART**<br>• **[61] United States' Motion for Summary Judgment; and**<br>• **[64] Defendants Gurule Properties, Inc. and Linda Gurule's Motion for Summary Judgment**<br><br>Case No. 2:15-cv-00065-DN<br><br>District Judge David Nuffer |

The United States of America ("United States") filed this action on February 2, 2015, seeking to reduce to judgment federal tax assessments against T.J. Enterprises & Acoustical, Inc. ("T.J. Enterprises") and to foreclose related tax liens against real property located at 480 West Century Drive, Murray, Utah 84123 (the "Subject Property").[1] Gurule Properties Incorporated ("GPI") holds record title to the Subject Property and disputes that T.J. Enterprises has any legal or equitable interest in the Subject Property. The United States has filed a Motion for Summary

---

[1] Complaint, docket no. 2, filed Feb. 2, 2015.

Judgment ("U.S. Motion for Summary Judgment").[2] Defendants GPI and Linda Gurule (collectively, the "Gurule Defendants") filed a memorandum in opposition,[3] and Defendant T.J. Enterprises filed a memorandum in response,[4] to which the United States replied.[5]

The Gurule Defendants also filed a joint Motion for Summary Judgment ("Gurule Motion for Summary Judgment"),[6] which is fully briefed and involves the same issues raised in the U.S. Motion for Summary Judgment.[7]

The parties agree that the United States' federal tax assessments against T.J. Enterprises should be reduced to judgment. However, the United States has failed to meet its burden to establish that T.J. Enterprises has an interest in the Subject Property, or that the United States otherwise has valid and enforceable tax liens on the Subject Property. Therefore, as discussed below, the U.S. Motion for Summary Judgment[8] and the Gurule Motion for Summary Judgment[9] are granted in part and denied in part.

---

[2] United States' Motion for Summary Judgment and Supporting Memorandum ("U.S. Motion for Summary Judgment"), docket no. 61, filed Apr. 30, 2017.

[3] Memorandum of Defendants Gurule Properties, Inc. and Linda Gurule in Opposition to Plaintiff's Motion for Summary Judgment ("Gurule Opposition to U.S. Motion for Summary Judgment"), docket no. 66, filed May 30, 2017.

[4] Memorandum of Defendant T.J. Enterprises in Response to Plaintiff's Motion Summary Judgment ("T.J. Enterprises Response to U.S. Motion for Summary Judgment"), docket no. 68, filed May 30, 2017.

[5] United States' Reply in Support of Motion for Summary Judgment ("U.S. Reply in Support of Motion for Summary Judgment"), docket no. 70, filed June 13, 2017.

[6] Motion for Summary Judgment of Defendants Gurule Properties, Inc. and Linda Gurule ("Gurule Motion for Summary Judgment"), docket no. 64, filed May 1, 2017.

[7] United States' Memorandum in Response to Motion for Summary Judgment ("U.S. Opposition to Gurule Motion for Summary Judgment"), docket no. 69, filed May 30, 2017; Reply Memorandum in Support of Motion for Summary Judgment of Defendants Gurule Properties, Inc. and Linda Gurule ("Gurule Reply in Support of Motion for Summary Judgement"), docket no. 71, filed June 13, 2017.

[8] Docket no. 61.

[9] Docket no. 64.

**Contents**

Undisputed Facts...........................................................................................................................3
    Federal Tax Liabilities ..........................................................................................................4
    Federal Tax Liens .................................................................................................................13
    The Subject Property............................................................................................................15
    Other Parties to the Lawsuit................................................................................................20
Summary Judgment Standard ......................................................................................................26
Discussion ....................................................................................................................................27
    The United States' action is not subject to a Utah State statute of limitations. ..............27
    The United States is entitled to summary judgment reducing the federal tax assessments
        against T.J. Enterprises to judgment. ....................................................................28
    GPI is entitled to summary judgment regarding the Subject Property and the validity of
        the tax liens against the property. .........................................................................29
        The undisputed material facts establish that T.J. Enterprises does not have an
            interest in the Subject Property under Utah law. .....................................30
        Because T.J. Enterprises does not have a legal interest in the Subject Property, the
            United States is not entitled to foreclose the tax liens against the Subject
            Property.....................................................................................................32
    Issues regarding the Deed of Trust assigned to Linda Gurule are moot..........................33
Order……......................................................................................................................................33

**UNDISPUTED FACTS[10]**

1.      T.J. Enterprises was incorporated in Utah by Teddy Gurule in 1997.[11]

2.      Teddy Gurule was the President and sole owner of T.J. Enterprises.[12]

3.      In 2003, T.J. Enterprises began having significant tax related difficulties and other

serious financial problems, which continued until T.J. Enterprises went out of business in 2010.[13]

---

[10] The following Undisputed Facts are taken from the facts asserted in the parties' briefing. All material facts asserted by the parties for which no dispute was raised or supported are considered undisputed for purposes of summary judgment. FED. R. CIV. P. 56(e)(2).

[11] U.S. Motion for Summary Judgment ¶ 25 at 19; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 13.

[12] U.S. Motion for Summary Judgment ¶ 26 at 19; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 13. *See also* Gurule Motion for Summary Judgment ¶ 3 at 10; U.S. Opposition to Gurule Motion for Summary Judgment at 6.

[13] Gurule Motion for Summary Judgment ¶ 1 at 16; U.S. Opposition to Gurule Motion for Summary Judgment at 9.

**Federal Tax Liabilities**

4.     T.J. Enterprises filed quarterly federal employment tax (Form 941) returns for the tax periods ending: 6/30/2003, 9/30/2003, 12/31/2003, 3/31/2004, 6/30/2004, 9/30/2004, 12/31/2004, 3/31/2005, 12/31/2005, 3/31/2006, 6/30/2006, 9/30/2006, 12/31/2006, 3/31/2007, 6/30/2007, 9/30/2007, 12/31/2007, 6/30/2009, 9/30/2009, and 3/31/2010. Each of those returns showed a balance due for the relevant tax period; however, T.J. Enterprises failed to make payments of those taxes when they were due.[14]

5.     For the quarter ending 12/31/2009, T.J. Enterprises failed to file a quarterly federal employment tax (Form 941) return. After examination, the IRS assessed the balance due for that quarter.[15]

6.     On the following dates, a duly-authorized delegate of the Secretary of Treasury made timely assessments of liability for the unpaid quarterly federal employment taxes, penalties, and interest as follows:[16]

**Form 941 Assessments**

| Tax Period | Assessment Date | Amount Assessed |
|---|---|---|
| 2003 – Q2 (Jun. 2003) | 8/16/2004 | $ 33,103.17 (Tax) |
| | 8/16/2004 | 7,448.21 (Late Filing Penalty) |
| | 8/16/2004 | 3,310.32 (Fed. Tax Deposit Penalty) |
| | 8/16/2004 | 2,151.71 (Failure to Pay Tax Penalty |
| | 8/16/2004 | 1,906.78 (Interest) |
| | 9/20/2004 | 1,655.16 (Fed. Tax Deposit Penalty) |
| | 10/15/2007 | 4,633.13 (Failure to Pay Tax Penalty) |
| | | |
| 2003 – Q3 (Sept. 2003) | 8/16/2004 | $ 59,383.60 (Tax) |
| | 8/16/2004 | 13,361.31 (Late Filing Penalty) |

---

[14] U.S. Motion for Summary Judgment ¶ 1 at 5; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[15] U.S. Motion for Summary Judgment ¶ 2 at 5; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[16] U.S. Motion for Summary Judgment ¶ 3 at 5-10; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

| | | |
|---|---|---|
| | 8/16/2004 | 5,938.36 (Fed. Tax Deposit Penalty) |
| | 8/16/2004 | 2,969.19 (Failure to Pay Tax Penalty) |
| | 8/16/2004 | 2,530.65 (Interest) |
| | 9/20/2004 | 2,969.18 (Fed. Tax Deposit Penalty) |
| | 10/15/2007 | 11,876.72 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 59,484.28 (Interest) |
| | | |
| 2003 – Q4 (Dec. 2003) | 9/6/2004 | $ 79,131.75 (Tax) |
| | 9/6/2004 | 17,804.64 (Late Filing Penalty) |
| | 9/6/2004 | 7,913.16 (Fed. Tax Deposit Penalty) |
| | 9/6/2004 | 3,165.27 (Failure to Pay Tax Penalty) |
| | 9/6/2004 | 2,595.11 (Interest) |
| | 10/11/2004 | 3,956.59 (Fed. Tax Deposit Penalty) |
| | 10/15/2007 | 16,617.67 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 78,096.03 (Interest) |
| | | |
| 2004 – Q1 (Mar. 2004) | 7/26/2004 | $ 52,848.32 (Tax) |
| | 7/26/2004 | 5,284.83 (Fed. Tax Deposit Penalty) |
| | 7/26/2004 | 792.72 (Failure to Pay Tax Penalty) |
| | 7/26/2004 | 593.84 (Interest) |
| | 8/30/2004 | 2,642.42 (Fed. Tax Deposit Penalty) |
| | 10/15/2007 | 12,155.70 (Failure to Pay Tax Penalty) |
| | 10/13/2008 | 246.66 (Failure to Pay Tax Penalty) |
| | 10/17/2011 | 299.40 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 40,688.93 (Interest) |
| | | |
| 2004 – Q2 (Jun. 2004) | 11/8/2004 | $ 2,500.63 (Tax) |
| | 11/8/2004 | 250.06 (Fed. Tax Deposit Penalty) |
| | 11/8/2004 | 50.01 (Failure to Pay Tax Penalty) |
| | 11/8/2004 | 30.18 (Interest) |
| | 9/20/2004 | 81,239.02 (Tax from Duplicate Return) |
| | 9/20/2004 | 8,123.90 (Late Filing Penalty) |
| | 9/20/2004 | 8,123.90 (Fed. Tax Deposit Penalty) |
| | 9/20/2014 | 733.51 (Interest) |
| | 10/15/2007 | 20,884.90 (Failure to Pay Tax Penalty) |
| | 10/13/2008 | 418.70 (Failure to Pay Tax Penalty) |
| | 10/17/2011 | 2,487.18 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 69,618.14 (Interest Assessed) |
| | | |
| 2004 – Q3 (Sept. 2004) | 11/29/2004 | $ 63,462.99 (Tax) |
| | 11/29/2004 | 6,271.03 (Fed. Tax Deposit Penalty) |
| | 11/29/2004 | 313.55 (Failure to Pay Tax Penalty) |
| | 11/29/2004 | 248.92 (Interest) |
| | 1/3/2005 | 3,135.51 (Fed. Tax Deposit Penalty) |
| | 10/15/2007 | 15,364.01 (Failure to Pay Tax Penalty) |

|  | 10/13/2008 | 313.55 (Failure to Pay Tax Penalty) |
|  | 10/17/2011 | 3,449.07 (Failure to Pay Tax Penalty) |
|  | 10/20/2014 | 48,896.97 (Interest) |
|  |  |  |
| 2004 – Q4 | 5/26/2005 | $ 81,921.26 (Tax) |
| (Dec. 2004) | 5/26/2005 | 8,891.14 (Late Filing Penalty) |
|  | 5/26/2005 | 6,586.03 (Fed. Tax Deposit Penalty) |
|  | 5/26/2005 | 1,290.91 (Interest) |
|  | 3/26/2007 | 4,826.95 (Fed. Tax Deposit Penalty) |
|  | 3/26/2007 | 48,269.52 (Additional Tax Assessed) |
|  | 5/28/2007 | 2,413.47 (Fed. Tax Deposit Penalty) |
|  | 10/15/2007 | 19,843.95 (Failure to Pay Tax Penalty) |
|  | 10/13/2008 | 5,792.34 (Failure to Pay Tax Penalty) |
|  | 10/17/2011 | 2,896.17 (Failure to Pay Tax Penalty) |
|  | 10/20/2014 | 87,527.63 (Interest) |
|  |  |  |
| 2005-Q1 | 5/26/2005 | $ 72,048.84 (Tax) |
| (Mar. 2005) | 5/26/2005 | 2,313.10 (Late Filing Penalty) |
|  | 5/26/2005 | 7,204.88 (Fed. Tax Deposit Penalty) |
|  | 5/26/2005 | 374.53 (Interest) |
|  | 10/15/2007 | 17,339.44 (Failure to Pay Tax Penalty) |
|  | 10/20/2014 | 51,129.10 (Interest) |
|  |  |  |
| 2005 – Q4 | 2/11/2008 | $ 37,026.42 (Tax) |
| (Dec. 2005) | 2/11/2008 | 4,207.71 (Late Filing Penalty) |
|  | 2/11/2008 | 1,870.08 (Fed. Tax Deposit Penalty) |
|  | 2/11/2008 | 2,337.62 (Failure to Pay Tax Penalty) |
|  | 2/11/2008 | 3,897.37 (Interest) |
|  | 3/17/2008 | 935.05 (Fed. Tax Deposit Penalty) |
|  | 10/17/2011 | 2,337.61 (Failure to Pay Tax Penalty) |
|  | 10/20/2014 | 9,430.32 (Interest) |
|  |  |  |
| 2006 – Q1 | 7/17/2006 | $ 74,431.94 (Tax) |
| (Mar. 2006) | 7/17/2006 | 2,675.08 (Late Filing Penalty) |
|  | 7/17/2006 | 562.23 (Failure to Pay Tax Penalty) |
|  | 7/17/2006 | 584.41 (Interest) |
|  | 7/17/2006 | 1,350.00 (Late Filing Penalty) |
|  | 10/30/2006 | 4,946.79 (Fed. Tax Deposit Penalty) |
|  | 10/30/2006 | 18.11 (Interest) |
|  | 10/15/2007 | 960.00 (Failure to Pay Tax Penalty) |
|  | 10/13/2008 | 720.00 (Failure to Pay Tax Penalty) |
|  | 10/20/2014 | 7,631.08 (Interest) |
|  |  |  |
| 2006 – Q2 | 12/03/2007 | $ 111,508.00 (Tax) |
| (Jun. 2006) | 12/03/2007 | 10,658.25 (Late Filing Penalty) |

| | | |
|---|---|---|
| | 12/03/2007 | 5,947.09 (Fed. Tax Deposit Penalty) |
| | 12/03/2007 | 4,026.45 (Failure to Pay Tax Penalty) |
| | 12/03/2007 | 6,578.28 (Interest) |
| | 1/7/2008 | 2,368.50 (Fed. Tax Deposit Penalty) |
| | 10/17/2011 | 7,816.05 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 24,341.38 (Interest) |
| | | |
| 2006 – Q3 | 12/3/2007 | $ 124,849.00 (Tax) |
| (Sept. 2006) | 12/3/2007 | 26,516.02 (Late Filing Penalty) |
| | 12/3/2007 | 11,924.88 (Fed. Tax Deposit Penalty) |
| | 12/3/2007 | 8,249.43 (Failure to Pay Tax Penalty) |
| | 12/3/2007 | 13,157.48 (Interest) |
| | 1/7/2008 | 5,892.45 (Fed Tax Deposit Penalty) |
| | 10/17/2011 | 21,212.81 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 58,289.01 (Interest) |
| | | |
| 2006 – Q4 | 12/3/2007 | $ 109,054.00 (Tax) |
| (Dec. 2006) | 12/3/2007 | 24,537.15 (Late Filing Penalty) |
| | 12/3/2007 | 10,905.36 (Fed. Tax Deposit Penalty) |
| | 12/3/2007 | 5,997.97 (Failure to Pay Tax Penalty) |
| | 12/3/2007 | 9,266.00 (Interest) |
| | 1/7/2008 | 5,452.70 (Fed. Tax Deposit Penalty) |
| | 10/17/2011 | 21,265.53 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 52,658.70 (Interest) |
| | | |
| 2007 – Q1 | 12/3/2007 | 23,868.20 (Tax) |
| (Mar. 2007) | 12/3/2007 | 5,145.34 (Late Filing Penalty) |
| | 12/3/2007 | 2,386.81 (Fed. Tax Deposit Penalty) |
| | 12/3/2007 | 914.73 (Failure to Pay Tax Penalty) |
| | 12/3/2007 | 1,364.41 (Interest) |
| | 1/7/2008 | 1,143.41 (Fed. Tax Deposit Penalty) |
| | 10/17/2011 | 4,802.32 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 10,822.58 (Interest) |
| | | |
| 2007 – Q2 | 12/3/2007 | $ 13,880.02 (Tax) |
| (Jun. 2007) | 12/3/2007 | 1,873.80 (Late Filing Penalty) |
| | 12/3/2007 | 1,388.00 (Fed. Tax Deposit Penalty) |
| | 12/3/2007 | 347.00 (Failure to Pay Tax Penalty) |
| | 12/3/2007 | 437.53 (Interest) |
| | 1/7/2008 | 694.00 (Fed. Tax Deposit Penalty) |
| | 10/17/2011 | 3,123.00 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 6,002.69 (Interest) |
| | | |
| 2007 – Q3 | 12/17/2007 | $ 39,715.08 (Tax) |
| (Sept. 2007) | 12/17/2007 | 201.71 (Failure to Pay Tax Penalty) |

| | | |
|---|---|---|
| | 12/17/2007 | 208.84 (Interest) |
| | 3/31/2008 | 2,873.35 (Fed. Tax Deposit Penalty) |
| | 10/17/2011 | 3,044.39 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 5,020.70 (Interest) |
| | | |
| 2007 – Q4 (Dec. 2007) | 06/30/2008 | $ 41,204.27 (Tax) |
| | 06/30/2008 | 1,257.21 (Late Filing Penalty) |
| | 06/30/2008 | 698.45 (Failure to Pay Tax Penalty) |
| | 06/30/2008 | 780.76 (Interest) |
| | 7/21/2008 | 3,130.66 (Fed. Tax Deposit Penalty) |
| | 7/21/2008 | 139.69 (Failure to Pay Tax Penalty) |
| | 7/21/2008 | 88.12 (Interest) |
| | 10/17/2011 | 6,146.38 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 9,224.53 (Interest) |
| | | |
| 2009 – Q2 (Jun. 2009) | 8/31/2009 | $ 83,549.58 (Tax) |
| | 8/31/2009 | 2,318.90 (Fed. Tax Deposit Penalty) |
| | 10/20/2014 | 417.05 (Interest) |
| 2009 – Q3 (Sept. 2009) | 12/07/2009 | $ 58,343.62 (Tax) |
| | 12/07/2009 | 4,144.64 (Fed. Tax Deposit Penalty) |
| | 10/20/2014 | 665.23 (Interest) |
| | | |
| 2009 – Q4 (Dec. 2009) | 11/1/2010 | $ 117,625.04 (Tax) |
| | 11/1/2010 | 24,188.38 (Late Filing Penalty) |
| | 11/1/2010 | 5,375.19 (Failure to Pay Tax Penalty) |
| | 11/1/2010 | 4,014.12 (Interest) |
| | 12/14/2011 | 10,766.35 (Fed. Tax Deposit Penalty) |
| | 10/17/2011 | 5,912.72 (Failure to Pay Tax Penalty) |
| | 10/15/2012 | 6,450.23 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 21,170.61 (Interest) |
| | 10/20/2014 | 9,137.83 (Failure to Pay Tax Penalty) |
| | | |
| 2010 – Q1 (Mar. 2010) | 6/21/2010 | $ 152,308.05 (Tax) |
| | 6/21/2010 | 21.74 (Failure to Pay Tax Penalty) |
| | 6/21/2010 | 12.42 (Interest) |
| | 10/17/2011 | 326.09 (Failure to Pay Tax Penalty) |
| | 10/15/2012 | 195.65 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 378.16 (Interest) |

7. Despite timely notice and demand for payment of the tax assessments described above, T.J. Enterprises has neglected or refused to make full payment of the assessed amounts to the United States.[17]

8. T.J. Enterprises filed federal unemployment tax (Form 940) returns for the 2007 and 2010 tax years. Each of those returns showed a balance due for the relevant tax period; however, T.J. Enterprises failed to make payments of those taxes when they were due.[18]

9. On the following dates, a duly-authorized delegate of the Secretary of Treasury made timely assessments of liability for the unpaid federal unemployment taxes, penalties, and interest as follows:[19]

**Form 940 Assessments**

| Tax Period | Assessment Date | Amount Assessed |
|---|---|---|
| 2007 | 4/14/2008 | $ 2,598.49 (Tax) |
| | 4/14/2008 | 116.93 (Late Filing Penalty) |
| | 4/14/2008 | 259.84 (Fed. Tax Deposit Penalty) |
| | 4/14/2008 | 38.98 (Failure to Pay Tax Penalty) |
| | 4/14/2008 | 37.65 (Interest) |
| | 5/19/2008 | 129.92 (Fed. Tax Deposit Penalty) |
| | 2/2/2009 | 159.78 (Failure to Pay Tax Penalty) |
| | 2/2/2009 | 104.41 (Interest) |
| | 2/1/2010 | 510.14 (Additional Tax Assessed) |
| | 2/1/2010 | 25.51 (Late Filing Penalty) |
| | 2/1/2010 | 55.78 (Interest) |
| | 10/17/2011 | 24.64 (Failure to Pay Tax Penalty) |
| | 10/15/2012 | 12.69 (Failure to Pay Tax Penalty) |
| | 10/20/2014 | 102.68 (Interest) |
| | | |
| 2010 | 3/7/2011 | $ 6,708.16 (Tax) |
| | 3/7/2011 | 6.32 (Failure to Pay Tax Penalty) |
| | 3/7/2011 | 1.82 (Interest) |

---

[17] U.S. Motion for Summary Judgment ¶ 4 at 10; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[18] U.S. Motion for Summary Judgment ¶ 5 at 10; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[19] U.S. Motion for Summary Judgment ¶ 6 at 10-11; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

| | |
|---|---|
| 10/15/2012 | 59.99 (Failure to Pay Tax Penalty) |
| 10/20/2014 | 83.05 (Interest) |
| 10/20/2014 | 91.57 (Failure to Pay Tax Penalty) |

10.     Despite timely notice and demand for payment of the tax assessments described above, T.J. Enterprises has neglected or refused to make full payment of the assessed amounts to the United States.[20]

11.     T.J. Enterprises filed a federal corporation income tax (Form 1120) return for the 2008 tax year. T.J. Enterprises' Form 1120 showed a balance due for the relevant tax period; however, T.J. Enterprises failed to make payments of those taxes when they were due.[21]

12.     On the following dates, a duly-authorized delegate of the Secretary of Treasury made timely assessments of liability for the unpaid federal income taxes, penalties, and interest as follows:[22]

**Form 1120 Assessments**

| Tax Period | Assessment Date | Amount Assessed |
|---|---|---|
| 2008 | 11/30/2009 | $ 178.00 (Late Filing Penalty) |
| | 10/20/2014 | 33.86 (Interest) |

13.     Despite timely notice and demand for payment of the tax assessments described above, T.J. Enterprises has neglected or refused to make full payment of the assessed amounts to the United States.[23]

---

[20] U.S. Motion for Summary Judgment ¶ 7 at 11; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[21] U.S. Motion for Summary Judgment ¶ 8 at 12; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[22] U.S. Motion for Summary Judgment ¶ 9 at 12; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[23] U.S. Motion for Summary Judgment ¶ 10 at 12; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

14.     For the tax period ending 12/31/2006, T.J. Enterprises failed to file Form W-2s for its employees, as required by 26 U.S.C. § 6051.[24]

15.     Pursuant to 26 U.S.C. § 6721(e), the IRS made a timely assessment of liability for the unpaid Section 6721 penalty as follows:[25]

**26 U.S.C. § 6721 Penalty**

| Tax Period | Assessment Date | Amount Assessed |
|---|---|---|
| Dec. 2006 | 1/4/2010 | $ 188,473.90 (Civil Penalty) |
| | 10/20/2014 | 32,407.15 (Interest) |

16.     Despite timely notice and demand for payment of the tax assessments described above, T.J. Enterprises has neglected or refused to make full payment of the assessed amounts to the United States.[26]

17.     T.J. Enterprises made a request for installment agreement on May 12, 2005, which the IRS accepted on October 24, 2005.[27]

18.     The installment agreement was terminated in April 2006 after T.J. Enterprises failed to make payment, and notice of the termination of the installment agreement was sent to T.J. Enterprises on April 8, 2006.[28]

19.     As of April 28, 2017, the outstanding balances of the assessments against T.J. Enterprises are as follows:[29]

---

[24] U.S. Motion for Summary Judgment ¶ 11 at 12; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[25] U.S. Motion for Summary Judgment ¶ 12 at 13; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[26] U.S. Motion for Summary Judgment ¶13 at 13; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[27] U.S. Motion for Summary Judgment ¶ 14 at 13; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[28] U.S. Motion for Summary Judgment ¶ 15 at 13; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[29] U.S. Motion for Summary Judgment ¶ 16 at 14; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

| Tax Type | Tax Period | Outstanding Balance |
|---|---|---|
| Form 941 | 6/30/2003 | $25,271.10 |
| | 9/30/2003 | $172,854.39 |
| | 12/31/2003 | $228,178.58 |
| | 3/31/2004 | $116,101.89 |
| | 6/30/2004 | $208,962.58 |
| | 9/30/2004 | $149,291.93 |
| | 12/31/2004 | $277,148.27 |
| | 3/31/2005 | $161,042.66 |
| | 12/31/2005 | $47,659.83 |
| | 3/31/2006 | $28,442.35 |
| | 6/30/2006 | $118,990.69 |
| | 9/30/2006 | $286,821.25 |
| | 12/31/2006 | $260,707.01 |
| | 3/31/2007 | $53,907.87 |
| | 6/30/2007 | $30,248.66 |
| | 9/30/2007 | $26,201.76 |
| | 12/31/2007 | $53,859.99 |
| | 6/30/2009 | $2,872.62 |
| | 9/30/2009 | $4,858.00 |
| | 12/31/2009 | $212,086.27 |
| | 3/31/2010 | $3,410.08 |
| | | |
| Form 940 | 2007 | $797.41 |
| | 2010 | $974.91 |
| | | |
| Form 1120 | 2008 | $252.78 |
| | | |
| § 6721 Penalty | 12/31/2006 | $240,825.76 |

20.     The total outstanding balance of the assessments against T.J. Enterprises at issue in this lawsuit is $2,711,768.64, as of April 28, 2017.[30]

21.     T.J. Enterprises does not dispute the assessments or balances due for any of the tax periods at issue in this case.[31]

---

[30] U.S. Motion for Summary Judgment ¶ 17 at 15; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

[31] U.S. Motion for Summary Judgment ¶ 18 at 15; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 4; and Gurule Opposition to U.S. Motion for Summary Judgment at 6.

**Federal Tax Liens**

22.     Despite timely notice and demand for payment of the tax assessments for each of
the tax periods at issue in this matter, T.J. Enterprises neglected or refused to make full payment
of the assessed amounts to the United States.[32]

23.     As a result of T.J. Enterprises' failure to pay the employment taxes,
unemployment taxes, income taxes, and civil penalties described above, and in order to provide
notice to third parties entitled to notice of the statutory liens under 26 U.S.C. § 6323, the IRS
filed Notices of Federal Tax Liens ("NFTL") regarding the tax assessments with the County
Recorder of Salt Lake County, Utah.[33]

24.     The United States filed and re-filed its NFTLs pursuant to 26 U.S.C. § 6323 as
follows:[34]

**NFTL Filings**

| Tax Type | Tax Period | Filing Date | Refiling Date |
|----------|-----------|-------------|---------------|
| Form 941 | 6/30/2003 | 9/15/2004[*] | 11/22/2013 |
| | 9/30/2003 | 9/15/2004[*] | 11/22/2013 |
| | 12/31/2003 | 1/14/2005 | 11/22/2013 |
| | 3/31/2004 | 9/15/2004[*] | 9/30/2013 |
| | 6/30/2004 | 1/14/2005 | 7/25/2014 |
| | 9/30/2004 | 1/14/2005 | 7/25/2014 |
| | 12/31/2004 | 6/21/2005 | 7/25/2014 |
| | 3/31/2005 | 6/21/2005 | 7/25/2014 |
| | 12/31/2005 | 3/20/2008 | |
| | 3/31/2006 | 10/9/2007 | |
| | 6/30/2006 | 3/18/2008 | |
| | 9/30/2006 | 3/18/2008 | |
| | 12/31/2006 | 3/18/2008 | |

---

[32] U.S. Motion for Summary Judgment ¶ 19 at 15; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 5; and Gurule Opposition to U.S. Motion for Summary Judgment at 8.

[33] U.S. Motion for Summary Judgment ¶ 20 at 16; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 6; and Gurule Opposition to U.S. Motion for Summary Judgment at 8.

[34] U.S. Motion for Summary Judgment ¶ 21 at 16-17; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 6; and Gurule Opposition to U.S. Motion for Summary Judgment at 9.

| | 3/31/2007 | 3/18/2008 | |
| | 6/30/2007 | 3/18/2008 | |
| | 9/30/2007 | 3/18/2008 | |
| | 12/31/2007 | 7/30/2008 | |
| | 6/30/2009 | 1/11/2010 | |
| | 9/30/2009 | 1/25/2010 | |
| | 12/31/2009 | 12/6/2010 | |
| | 3/31/2010 | 9/3/2010 | |
| | | | |
| Form 940 | 2007 | 7/30/2008 | |
| | 2010 | 4/4/2011 | |
| | | | |
| Form 1120 | 2008 | 2/7/2011 | |
| | | | |
| § 6721 Penalty | 12/31/2006 | 3/4/2010 | |

\* A revised NFTL was filed on September 14, 2009 for the tax periods ending 6/30/2003, 9/30/2003, and 3/31/2004 to correct the assessment dates listed in the original NFTLs

25.     In order to provide additional notice to potential subsequent purchasers and third parties entitled to notice of the statutory liens under 26 U.S.C. § 6323, the IRS filed Notices of Federal Tax Liens and NFTL re-filings as to Gurule Properties, as alter ego, nominee, or transferee of T.J. Enterprises, regarding the tax assessments with the County Recorder of Salt Lake County, Utah, as follows:[35]

**Nominee NFTL Filings**

| Tax Type | Tax Period | Filing Date | Refiling Date |
| --- | --- | --- | --- |
| Form 941 | 6/30/2003 | 9/9/2008 | 12/1/2014 |
| | 9/30/2003 | 9/9/2008 | 12/1/2014 |
| | 12/31/2003 | 9/9/2008 | 12/1/2014 |
| | 3/31/2004 | 9/9/2008 | 12/1/2014 |
| | 6/30/2004 | 9/9/2008 | 12/1/2014 |
| | 9/30/2004 | 9/9/2008 | 12/1/2014 |
| | 12/31/2004 | 9/9/2008 | 12/1/2014 |
| | 3/31/2005 | 9/9/2008 | 12/1/2014 |
| | 12/31/2005 | 9/9/2008 | |
| | 3/31/2006 | 9/9/2008 | |
| | 6/30/2006 | 9/9/2008 | |

[35] U.S. Motion for Summary Judgment ¶ 22 at 17-18; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 6; and Gurule Opposition to U.S. Motion for Summary Judgment at 9.

| | | | |
|---|---|---|---|
| | 9/30/2006 | 9/9/2008 | |
| | 12/31/2006 | 9/9/2008 | |
| | 3/31/2007 | 9/9/2008 | |
| | 6/30/2007 | 9/9/2008 | |
| | 9/30/2007 | 9/9/2008 | |
| | 12/31/2007 | 9/9/2008 | |
| | | | |
| Form 940 | 2007 | 9/9/2008 | |
| | | | |
| Form 1120 | 2008 | 3/7/2011 | |

**The Subject Property**

26.     The Subject Property consists of one parcel of real property located at 480 West

Century Drive, Murray, Utah 84123.[36]

27.     The Subject Property is more-particularly described in Paragraph 27 of the United

States Complaint.[37]

28.     Prior to the purchase of the Subject Property, T.J. Enterprises leased commercial

space for approximately $1,700 per month.[38]

29.     In or about July 2005, Teddy Gurule's mother (Linda Gurule) was attending a

church which is located immediately adjacent to the Subject Property and "300 yards or so" from

the property T.J. Enterprises was renting at the time.[39]

30.     Linda Gurule observed a sign placard with words to the effect that the building

was for sale by the owner.[40]

---

[36] U.S. Motion for Summary Judgment ¶ 23 at 19; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 13. *See also* Gurule Motion for Summary Judgment ¶ 1 at 10; U.S. Opposition to Gurule Motion for Summary Judgment at 6.

[37] U.S. Motion for Summary Judgment ¶ 24 at 19; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 13.

[38] U.S. Motion for Summary Judgment ¶ 27 at 19; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 13.

[39] Gurule Motion for Summary Judgment ¶ 6 at 11; U.S. Opposition to Gurule Motion for Summary Judgment at 6.

[40] Gurule Motion for Summary Judgment ¶ 7 at 11; U.S. Opposition to Gurule Motion for Summary Judgment at 7.

31.     Linda Gurule asked Teddy Gurule to make contact with the owner and see if they (Linda and Teddy) could negotiate agreeable terms for the purchase with the owner.[41]

32.     Linda Gurule and Teddy Gurule were involved in negotiating the purchase of the Subject Property from RDLC Management and, on July 27, 2005, Teddy Gurule signed a Note, Deed of Trust and Assignment of Rents, and other documents related to the purchase of the Subject Property on behalf of "Gurule Properties, Inc."[42]

33.     The purchase price for the Subject Property was $310,000.[43]

34.     Linda Gurule's husband, Barry Wickel, provided the initial down-payment to RDLC Management in the amount of $30,000.[44]

35.     T.J. Enterprises neither paid nor provided any of the money used by GPI for the down payment paid to RDLC Management.[45]

36.     GPI was incorporated on July 28, 2005.[46]

37.     Linda Gurule is the sole shareholder of GPI.[47]

38.     Linda Gurule and Teddy Gurule are Officers of GPI.[48]

---

[41] Gurule Motion for Summary Judgment ¶ 9 at 11; U.S. Opposition to Gurule Motion for Summary Judgment at 7.

[42] U.S. Motion for Summary Judgment ¶ 28 at 19; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 15. *See also* U.S. Motion for Summary Judgment, Ex. RW-45, Note; *id.*, Ex. RW-39, Deed of Trust and Assignment of Rents; *id.*, Ex. RW-49, Seller's Purchaser's Statement; *id.*, Ex. RW-20, GPI Dep. at 63:8-13. *See also* Gurule Motion for Summary Judgment ¶ 10 at 11; U.S. Opposition to Gurule Motion for Summary Judgment at 7.

[43] Gurule Motion for Summary Judgment ¶ 17 at 12; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

[44] Gurule Motion for Summary Judgment ¶ 19 at 13; U.S. Opposition to Gurule Motion for Summary Judgment at 8. *See also* Gurule Motion for Summary Judgment, Ex. D-4, Deposition Transcript of Linda Gurule at 26-27.

[45] Gurule Motion for Summary Judgment ¶ 24 at 14; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

[46] U.S. Motion for Summary Judgment ¶ 29 at 19; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 19. *See also* U.S. Motion for Summary Judgment, Ex. RW-32, Articles of Incorporation.

[47] Gurule Motion for Summary Judgment ¶ 12 at 12; U.S. Opposition to Gurule Motion for Summary Judgment at 7.

[48] U.S. Motion for Summary Judgment ¶ 30 at 20; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 20. *See also* Gurule Motion for Summary Judgment ¶ 14; U.S. Opposition to Gurule Motion for Summary Judgment at 7.

39.     Linda Gurule, Teddy Gurule, and Teddy's wife (Linda Gurule) are Directors of GPI.[49]

40.     The Subject Property was purchased through a contract and the execution of a Note with RDLC Management ("RDLC Management Note").[50]

41.     On August 5, 2005, GPI, by and through Ted Gurule, executed the RDLC Management Note for payment of the balance of the purchase price of $280,000.[51]

42.     On August 5, 2005, RDLC Management executed and delivered a Warranty Deed in favor and for the benefit of GPI, which was recorded with in the office of the Salt Lake Count Recorder on August 5, 2005, at 3:56 p.m.[52]

43.     On August 5, 2005, GPI executed and delivered a Deed of Trust and Assignment of Rents in favor of RDLC Management to secure payment due under the Note, which was recorded in the office of the Salt Lake County Recorder on August 5, 2005 at the same time as the Warranty Deed.[53]

44.     T.J. Enterprises paid no money to RDLC Management for any purpose on August 5, 2005, or to anyone else in connection with the purchase of the Subject Property.[54]

---

[49] U.S. Motion for Summary Judgment ¶ 30 at 20; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 20. *See also* Gurule Motion for Summary Judgment ¶ 13; U.S. Opposition to Gurule Motion for Summary Judgment at 7.

[50] U.S. Motion for Summary Judgment ¶ 33 at 20; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 21.

[51] Gurule Motion for Summary Judgment ¶ 20 at 13; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

[52] Gurule Motion for Summary Judgment ¶ 21 at 13; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

[53] Gurule Motion for Summary Judgment ¶ 22 at 13; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

[54] Gurule Motion for Summary Judgment ¶¶ 23, 25 at 14; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

45.     T.J. Enterprises had no agreement, written or otherwise, with RDLC Management or GPI in connection with the purchase of the Subject Property.[55]

46.     T.J. Enterprises never held title to the Subject Property in its own name and never transferred the Subject Property to GPI.[56]

47.     In addition to acting on GPI's behalf in purchasing the Subject Property, Teddy Gurule had signature authority on GPI's bank account, filed GPI's federal tax returns, and signed documents that purported to encumber the Subject Property.[57]

48.     GPI engaged in no business activities other than holding title to the Subject Property, and nobody other than T.J. Enterprises has occupied the property since GPI obtained title to the Subject Property.[58]

49.     The terms of repayment for the $280,000 RDLC Management Note required monthly payments of $2,000 and bi-annual balloon payments of $30,000, for a total of $84,000 per year.[59]

50.     Payments on the RDLC Management Note were made through First American Title Company.[60]

---

[55] Gurule Motion for Summary Judgment ¶¶ 26-27 at 14; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

[56] Gurule Motion for Summary Judgment ¶¶ 33-34 at 15; U.S. Opposition to Gurule Motion for Summary Judgment at 8.

[57] U.S. Motion for Summary Judgment ¶ 31 at 20; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 20.

[58] U.S. Motion for Summary Judgment ¶ 32 at 20; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 20.

[59] U.S. Motion for Summary Judgment ¶ 34 at 20; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 21.

[60] U.S. Motion for Summary Judgment ¶ 35 at 20; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 21.

51.     T.J. Enterprises and GPI entered into two commercial lease agreements for the Subject Property, under which T.J. Enterprises contracted to make regular monthly rent payments to GPI in the amount of $7,007.49. The lease agreements covered the time period of August 5, 2005 through December 31, 2009. During this time, T.J. Enterprises often made rent payments by making payments on the RDLC Management Note directly to First American Title Company.[61]

52.     During the period from August 2005 through 2008, T.J. Enterprises paid at least $262,263 towards the RDLC Management Note.[62]

53.     GPI's income tax returns for 2005 through 2008 show the amount of money paid from T.J. Enterprises towards the RDLC Management Note as income.[63]

54.     GPI has since filed amended income tax returns for 2005 through 2008, claiming that no income was received by GPI for those years and stating that "Gurule Properties received no income/rent. The rent was paid to the title company."[64]

55.     T.J. ceased all business operations sometime in 2010.[65]

---

[61] U.S. Motion for Summary Judgment ¶ 36 at 21; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 22-3. *See also* U.S. Motion for Summary Judgment, Ex. RW-24, Responses to Interrogatories at 3; *id*., Ex. RW-25, Responses to Interrogatories at 3; *id*., Ex. RW-48, Correspondence and Ledger from RDLC Management; *id*., Ex. RW-28 and RW-46, Commercial Leases.

[62] U.S. Motion for Summary Judgment ¶ 37 at 21; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 24-6. GPI *See also* U.S. Motion for Summary Judgment, Ex. RW-40 to RW-44, GPI's Corporate Income Tax Returns for Years 2005-2008; *id.*, Ex. RW-20, GPI Dep. at 35:17-46:25.

[63] U.S. Motion for Summary Judgment ¶ 38 at 21; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 26. *See also* U.S. Motion for Summary Judgment, Ex. RW-40 to RW-44, GPI's Corporate Income Tax Returns for Years 2005-2008; *id.*, Ex. RW-20, GPI Dep. at 35:17-46:25.

[64] U.S. Motion for Summary Judgment ¶ 39 at 21; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 27. *See also* U.S. Motion for Summary Judgment, Ex. RW-33 to RW-38, Amended Income Tax Returns. The explanation for GPI's amended zero-income returns can be found at Ex. RW-37 and RW-38 at 2.

[65] Gurule Motion for Summary Judgment ¶ 5 at 10; U.S. Opposition to Gurule Motion for Summary Judgment at 6.

56.     Prior to its dissolution and during the time that it occupied the Subject Property, T.J. Enterprises paid utility bills, property taxes, and upkeep and maintenance expenses related to the Subject Property as required under its lease agreement.[66]

57.     Prior to its dissolution, T.J. Enterprises enjoyed exclusive use of the Subject Property.[67]

### Other Parties to the Lawsuit

58.     T.J. Enterprises, GPI, and Linda Gurule are the main defendants in this action. All other defendants were named by the United States pursuant to 26 U.S.C. § 7403(b) as parties that may claim an interest in the Subject Property.[68]

59.     Linda Gurule has asserted that she has a secured interest in the Subject Property.[69]

60.     Both Linda Gurule and Teddy Gurule's brother (Terry Gurule) testified at length that they loaned tens of thousands of dollars to T.J. Enterprises over the years.[70]

61.     Linda Gurule's purported interest in the property is based upon a Deed of Trust, Assignment of Deed of Trust, and Affidavit of Correction to Deed of Trust.[71]

---

[66] U.S. Motion for Summary Judgment ¶ 40 at 21; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 27-8. *See also* U.S. Motion for Summary Judgment, Ex. RW-24, T.J. Enterprises Responses to Interrogatories at 4-5, 10; *id.*, Ex. RW-25 GPI Responses to Interrogatories at 3-4; *id.*, Ex. RW-28 and RW-46, Commercial Leases.

[67] U.S. Motion for Summary Judgment ¶ 41 at 21; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 28-9.

[68] U.S. Motion for Summary Judgment ¶ 42 at 22; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 29.

[69] U.S. Motion for Summary Judgment ¶ 43 at 22; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 29.

[70] U.S. Motion for Summary Judgment ¶ 48 at 23; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 31.

[71] U.S. Motion for Summary Judgment ¶ 44 at 22; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 29.

62.     Terry Gurule worked as an employee at T.J. Enterprises.[72] While working at T.J. Enterprises, he was owed wages and un-reimbursed business expenses from T.J. Enterprises.[73]

63.     Terry Gurule was severely injured in a motorcycle accident and received a cash settlement from a claim arising from injuries he sustained in the accident.[74]

64.     From the proceeds of the settlement, Terry Gurule made a series of loans to T.J. Enterprises.[75]

65.     Terry Gurule purchased a residential property by taking out a mortgage in his own name and on his own credit. The purpose of the purchase of the residential property was to provide a place for Teddy Gurule and his wife, Jennifer, to live with the agreement that Teddy and Jennifer would make all of the mortgage payments, and pay all other expenses associated with the residential property, holding Terry Gurule harmless from the risk of foreclosure or loss of the property.[76]

66.     In 2008, Terry Gurule perceived that T.J. Enterprises was having serious financial problems, including tax problems.[77]

67.     Concerned about being repaid for the loans, Terry Gurule obtained a Deed of Trust form from the internet and modified it.[78]

---

[72] Gurule Motion for Summary Judgment ¶ 2 at 17; U.S. Opposition to Gurule Motion for Summary Judgment at 9.

[73] Gurule Motion for Summary Judgment ¶ 6 at 17; U.S. Opposition to Gurule Motion for Summary Judgment at 9.

[74] Gurule Motion for Summary Judgment ¶¶ 3-4 at 17; U.S. Opposition to Gurule Motion for Summary Judgment at 9.

[75] Gurule Motion for Summary Judgment ¶ 5 at 17; U.S. Opposition to Gurule Motion for Summary Judgment at 9.

[76] Gurule Motion for Summary Judgment ¶¶ 7-8 at 17-18; U.S. Opposition to Gurule Motion for Summary Judgment at 9.

[77] Gurule Motion for Summary Judgment ¶ 10 at 18; U.S. Opposition to Gurule Motion for Summary Judgment at 10.

[78] Gurule Motion for Summary Judgment ¶ 11 at 18; U.S. Opposition to Gurule Motion for Summary Judgment at 10. *See also* Gurule Motion for Summary Judgment, Ex. D-13 Deposition of Terry Gurule at 40-49; *id.*, D-14, Deed of Trust.

68.     The Deed of Trust identifies Terry Gurule as the "lender." "T.J. Enterprises and Acoustical (A.K.A. Gurule Properties, Inc.)" as the "borrower," and secures repayment of $350,000 plus interest against the Subject Property.[79]

69.     Terry Gurule is not a lawyer and did not seek or receive any legal assistance or advice in preparing the Deed of Trust.[80]

70.     Terry Gurule demanded that Ted Gurule, Linda Gurule, and Jennifer Gurule sign the Deed of Trust so he could record it and secure repayment of his money and the value of the residential property in the event it was lost.[81]

71.     On March 17, 2008, Teddy Gurule as an agent for T.J. Enterprises, and Jennifer Gurule and Linda Gurule, each as individuals, signed the Deed of Trust, as prepared by Terry Gurule.[82]

72.     The Deed of Trust was recorded on the records of the Salt Lake County Recorder on March 18, 2008.[83]

---

[79] U.S. Motion for Summary Judgment ¶ 45 at 22; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 29.

[80] Gurule Motion for Summary Judgment ¶ 12 at 18; U.S. Opposition to Gurule Motion for Summary Judgment at 10.

[81] Gurule Motion for Summary Judgment ¶ 15 at 19; U.S. Opposition to Gurule Motion for Summary Judgment at 10.

[82] Gurule Motion for Summary Judgment ¶ 16 at 19; U.S. Opposition to Gurule Motion for Summary Judgment at 10. *See also* U.S. Motion for Summary Judgment ¶ 45 at 22; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 29.

[83] Gurule Motion for Summary Judgment ¶ 17 at 19; U.S. Opposition to Gurule Motion for Summary Judgment at 10.

73.     On August 25, 2011, Terry Gurule prepared and executed an Assignment of Deed of Trust that assigns original "Deed of Trust from T.J. Enterprises & Acoustical, Inc." to "Linda Lee Roach, aka Linda Lee Gurule." [84]

74.     At that time, Terry Gurule was in need of money to fund his bankruptcy case, and believed the Deed of Trust to be essentially worthless because of federal tax liens or other debts, and made the assignment to Linda Gurule in exchange for payment of $3,000.[85]

75.     The Assignment of Deed of Trust was recorded on the records of the Salt Lake County Recorder on August 25, 2011.[86]

76.     The $3,000 consideration for the Assignment was paid in full by Linda Gurule.[87]

77.     On December 14, 2014, T.J. Enterprises, Teddy Gurule, GPI, and Linda Gurule executed and recorded an Affidavit of Correction to Deed of Trust.[88]

78.     The Affidavit of Correction to Deed of Trust was signed by Teddy Gurule and Linda Gurule on December 18, 2014 to change the identity of the "borrower" in the original Deed of Trust and Assignment of Deed of Trust from T.J. Enterprises to GPI.[89]

---

[84] Gurule Motion for Summary Judgment ¶ 19 at 19; U.S. Opposition to Gurule Motion for Summary Judgment at 10. Gurule Motion for Summary Judgment, Ex. D-15, Assignment of Deed of Trust. *See also* U.S. Motion for Summary Judgment ¶ 46 at 22; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 30.

[85] Gurule Motion for Summary Judgment ¶ 20 at 19-20; U.S. Opposition to Gurule Motion for Summary Judgment at 10.

[86] Gurule Motion for Summary Judgment ¶ 21 at 20; U.S. Opposition to Gurule Motion for Summary Judgment at 11.

[87] Gurule Motion for Summary Judgment ¶ 22 at 20; U.S. Opposition to Gurule Motion for Summary Judgment at 11.

[88] Gurule Motion for Summary Judgment ¶ 23 at 20; U.S. Opposition to Gurule Motion for Summary Judgment at 11.

[89] U.S. Motion for Summary Judgment ¶ 47 at 22; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 30-1. *See also* U.S. Motion for Summary Judgment, Ex. RW-31, Affidavit of Correction to Deed of Trust.

79.     The debt owed by T.J. Enterprises to Terry Gurule has not been fully satisfied.[90]

80.     Neither Linda Gurule nor Terry Gurule ever loaned money to GPI.[91]

81.     RDLC Management was named as a defendant in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. On May 6, 2015, RDLC Management filed a document with the Court stating that its Note had been paid in full and that it had no interest in the Subject Property.[92]

82.     The State of Utah, Tax Commission, was named as a defendant in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. On April 21, 2015, State of Utah, Tax Commission, filed a Disclaimer of Interest, stating that the State has no interest in the Subject Property.[93]

83.     The State of Utah, Department of Workforce Services, was named as a defendant in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. On May 27, 2015, the State of Utah, Department of Workforce Services, filed a Disclaimer of Interest, stating that the State has no interest in the Subject Property.[94]

---

[90] Gurule Motion for Summary Judgment ¶ 25 at 20; U.S. Opposition to Gurule Motion for Summary Judgment at 12. The parties dispute the amount of money loaned and the amount currently outstanding; however, there is no dispute that Terry Gurule loaned T.J. Enterprises some amount of money that has not been repaid. *See* U.S. Motion for Summary Judgment, Ex. RW-22, Deposition of Terry Gurule at 41:2-45:22.

[91] U.S. Motion for Summary Judgment ¶ 49 at 23; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 31.

[92] U.S. Motion for Summary Judgment ¶ 50 at 23; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 32.

[93] U.S. Motion for Summary Judgment ¶ 51 at 23; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 32.

[94] U.S. Motion for Summary Judgment ¶ 52 at 23; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 32-3.

84.     Salt Lake County, Utah was named as a defendant in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. On March 8, 2017, the County and the United States stipulated as to the priority of the parties' respective liens.[95]

85.     The Workers Compensation Fund of Utah was named as a defendant in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. The Workers Compensation Fund of Utah disclaimed interest in the Subject Property and was granted dismissal from this action.[96]

86.     Certified Reprographics, Inc. was named as a defendant in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. Certified Reprographics claims an interest in the Subject Property by virtue of a judgment lien recorded upon the property on October 22, 2012.[97]

87.     Checkline, Inc. d/b/a Check Max, and New Hampshire Insurance Company, a member company of American International Group, Inc. were named as defendants in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. After failing to respond to the United States' Complaint, default was entered against them on September 12, 2016. The United States filed a Motion for Entry of Default Judgment against these two entities, which has been granted.[98]

---

[95] U.S. Motion for Summary Judgment ¶ 53 at 24; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 33.

[96] U.S. Motion for Summary Judgment ¶ 54 at 24; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 33.

[97] U.S. Motion for Summary Judgment ¶ 55 at 24; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 33.

[98] U.S. Motion for Summary Judgment ¶ 56 at 24; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 33-4.

88.     Savage Scaffold & Equipment, Inc. was named as a defendant in this matter under 26 U.S.C. § 7403(b) as a party that may claim an interest in the Subject Property. On July 27, 2016, Savage Scaffold filed a disclaimer of interest with the Court, stating that it has no interest in the Subject Property.[99]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[100] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[101] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[102] "As to materiality, the substantive law will identify which facts are material."[103] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[104] "Factual disputes that are irrelevant or unnecessary will not be counted."[105] In determining whether there is a genuine dispute as to a material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[106]

---

[99] U.S. Motion for Summary Judgment ¶ 57 at 24-5; T.J. Enterprises Response to U.S. Motion for Summary Judgment at 7-8; and Gurule Opposition to U.S. Motion for Summary Judgment at 34.

[100] Fed. R. Civ. P. 56(a).

[101] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[102] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[103] *Anderson*, 477 U.S. at 248.

[104] *Id.*

[105] *Id.*

[106] *Id.*

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[107] "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."[108] However, a party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts or speculation."[109]

## DISCUSSION

**The United States' action is not subject to a Utah State statute of limitations.**

As a preliminary matter, the Gurule Defendants argue that the United States' claim is barred by the statute of limitations under the Utah Fraudulent Transfer Act (UFTA).[110] This argument is without merit. As a sovereign, the United States is subject to a limitations period only when Congress has expressly created one.[111] It is well-established that a state statute of limitations cannot cut off the rights of the United States.[112] The Tenth Circuit has specifically held that state statutes of limitation do not apply in "a proceeding in court to collect a tax" because the government is "acting in its sovereign capacity in an effort to enforce rights ultimately grounded on federal law[.]"[113] In this case, where the United States is seeking to collect delinquent taxes, the applicable statute of limitations is the ten-year period pursuant to

---

[107] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

[108] FED. R. CIV. P. 56(c)(1).

[109] *Colony Natl Ins. Co. v. Omer*, No. CIV 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)).

[110] Utah Code Ann. § 25-6-10; Gurule Motion for Summary Judgment at 36-37.

[111] *Guaranty Trust Co. v. United States*, 304 U.S. 126, 133 (1938) (citing *United States v. Thompson*, 98 U.S. 486, 488 (1878)).

[112] *United States v. Summerlin*, 310 U.S. 414. 416 (1940). ("[T]he United States is not bound by state statutes of limitations . . . in enforcing its rights.").

[113] *United States v. Holmes*, 727 F.3d 1230, 1234-35 (10th Cir. 2013) (internal citations omitted).

26 U.S.C. § 6502(a).[114] Therefore, the Gurule Defendants' request for judgement as a matter of law under Rule 12(b) is denied.

### The United States is entitled to summary judgment reducing the federal tax assessments against T.J. Enterprises to judgment.

In Count I of its Complaint, the United States asserts that it is entitled to reduce to judgment: (1) each of the 21 quarters of unpaid federal employment taxes (Form 941) spanning from the quarter ending 6/30/2003 through the quarter ending 3/31/2010 assessed against T.J. Enterprises; (2) the unpaid unemployment taxes (Form 940) for the tax years ending 12/31/2007 and 12/31/2010 assessed against T.J. Enterprises; (3) the unpaid federal income taxes for the tax year ending 12/31/2008 assessed against T.J. Enterprises; and (4) the unpaid civil penalty for the tax period ending 12/31/2006 assessed against T.J. Enterprises.[115]

In an action brought to collect federal taxes, the government bears the initial burden of proof as to whether valid assessments have been made.[116] Once the government establishes its prima facie case, the burden shifts to the taxpayer to overcome this presumption by countervailing proof.[117] T.J. Enterprises admits that the assessments are valid and the balances stated in the United States' Complaint are correct. Moreover, T.J. Enterprises does not dispute the United States' claim to reduce the tax assessments to judgment.[118]

Therefore, the U.S. Motion for Summary Judgment is granted in part with respect to Count I of the Complaint. The United States has a perfected lien interest in all property and

---

[114] *See id.*

[115] Complaint ¶¶ 33-37 at 13-14; U.S. Motion for Summary Judgment at 26.

[116] *Palmer v. Internal Revenue Service*, 116 F.3d 1309, 1312 (9th Cir. 1997).

[117] *United States v. Strebler*, 313 F.2d 402, 403 (8th Cir. 1963) (citing *Paschal v. Blieden*, 127 F.2d 398, 401 (8th Cir. 1942)).

[118] T.J. Enterprises Response to U.S. Motion for Summary Judgment at 3.

rights to property belonging to T.J. Enterprises, as of the date the tax liabilities were assessed. A judgment in favor of the United States and against T.J. Enterprises will be entered in the amount of $2,711,768.64, as of April 28, 2017, plus statutory interest and other statutory additions pursuant to 26 U.S.C. §§ 6601, 6621, and 662, and 28 U.S.C. § 1961(c), until the balance is paid.

### GPI is entitled to summary judgment regarding the Subject Property and the validity of the tax liens against the property.

Counts II, III, and V of the Complaint address the Subject Property. Although title to the Subject Property is held by GPI, in Counts II and III, the United States claims that T.J. Enterprises has an interest in the Subject Property, either through GPI as T.J. Enterprises' nominee, alter ego, or transferee;[119] or, through a resulting trust.[120] Based upon this purported interest, the United States seeks to foreclose its federal tax liens against the Subject Property in Count V of the Complaint.[121] GPI disputes that T.J. Enterprises has a legal or equitable ownership interest in the Subject Property.[122]

Under 26 U.S.C. § 6321, a lien arises in favor of the United States "upon all property and rights to property, whether real or personal," belonging to a taxpayer who neglects or refuses to pay tax after demand.[123] However, Section 6321 does not create property rights.[124] Whether a

---

[119] Complaint ¶¶ 38-49 at 14-16.

[120] Complaint ¶¶ 50-51 at 16.

[121] Complaint ¶¶ 59-64 at 18.

[122] Gurule Opposition to U.S. Motion for Summary Judgment at 34-44.

[123] 26 U.S.C. § 6321. The tax lien attaches to any property interest subsequently acquired by the taxpayer while the lien is in force. *Glass City Bank v. United States,* 326 U.S. 265, 267-268 (1945). Furthermore, unless another date is specifically fixed by law, the lien arises at the time the assessment is made and continues until the tax liability and any additions are satisfied. 26. U.S.C. § 6322.

[124] *See United States v. Craft,* 535 U.S. 274, 278 (2002) ("The federal tax lien statute itself 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.");* Am. Inv. Fin. v. United States,* 476 F.3d 810, 813 (10th Cir. 2006) ("Federal law creates no property rights, but does attach federally defined consequences to rights created under state law").

particular asset belongs to a taxpayer is a question of state law.[125] Accordingly, "[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."[126]

Therefore, the determination of whether the United States is entitled to foreclose tax liens against the Subject Property involves a two-step inquiry. First, Utah law is applied to determine the nature of T.J. Enterprises' interest in the Subject Property.[127] If T.J. Enterprises has a property interest under Utah law, then federal law is applied to determine whether that property interest constitutes "property" or "rights to property" to which a federal tax lien attaches.[128]

**The undisputed material facts establish that T.J. Enterprises does not have an interest in the Subject Property under Utah law.**

Under Utah law, a party may retain a beneficial interest in property through various trust theories. The United States has conceded that the undisputed material facts demonstrate GPI is not T.J. Enterprises' transferee or alter ego.[129] Instead, the United States focused the majority of its argument on a federal nominee theory.[130] "A nominee is one who holds bare legal title to property for the benefit of another."[131] Although it is clear that the IRS may impose nominee tax

---

[125] *See Craft*, 535 U.S. at 278-79; *Dalton v. Comm'r of Internal Revenue*, 682 F.3d 149, 157 (1st Cir. 2012); *Holman v. United States*, 505 F.3d 1060, 1067-68 (10th Cir. 2007); *Spotts v. United States*, 429 F.3d 248, 251-53 (6th Cir. 2005); *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001).

[126] *Dyer v. United States*, 528 U.S. 49, 58 (1999).

[127] *Dyer*, 528 U.S. at 58; *Holman*, 505 F.3d at 1067.

[128] *Craft*, 535 U.S. at 278-79; *Dyer*, 528 U.S. at 58; *Holman*, 505 F.3d at 1067.

[129] U.S. Opposition to Gurule Motion for Summary Judgment at 19.

[130] *See Holman v. United States*, 505 F.3d 1060, 1065-68 (10th Cir. 2007).

[131] *Scoville*, 250 F.3d at 1202.

liens,[132] as an initial matter, state law still determines whether the taxpayer has an interest in the property the Government seeks to reach.[133] While some states may have laws that are similar, if not identical, to the federal nominee test, the United States has failed to identify or plead a nominee theory under Utah law.[134]

Therefore, the only remaining claim raised by the United States to establish a property interest under Utah law is a resulting trust.[135] "[A] purchase money resulting trust is an equitable remedy designed to implement what the law assumes to be the intentions of the putative trustor."[136] "Where a transfer of properties is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid[.]"[137] "The fact which must be proven in the case of a purchase money resulting trust is that one party paid the purchase price for property and another party was given legal title."[138] And "it is the intention 'at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises.'"[139] Evidence indicating the payor's intent to retain the beneficial interest in the property includes:

> (1) 'that the circumstances are such that the payor would have a reason for taking title in the name of another other than an intention to give him the beneficial interest . . . ; as, for example, where the payor had reasons for wishing that it

[132] *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (2003).

[133] *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1067 n.4 (9th Cir. 2013) (identifying circuits that have rejected application of federal nominee common law doctrine in lieu of state law to determine taxpayer's interest in property).

[134] Gurule Opposition to U.S. Motion for Summary Judgment at 40-44; Gurule Motion for Summary Judgment at 22. No party raised the theory of a constructive trust under Utah law, which is an equitable remedy and similar to the nominee theory. *See Wilcox v. Anchor Wate Co.*, 164 P.3d 353, 362 (Utah 2007).

[135] Complaint ¶¶ 50-51 at 16; U.S. Motion for Summary Judgment at 30-36; U.S. Reply at 6.

[136] *In re Estate of Hock*, 655 P.2d 1111, 1114 (Utah 1982).

[137] *Id*. at 1115 (quoting Restatement (Second) of Trusts § 440 (1959)).

[138] *Id*.

[139] *United States v. Tingey*, 716 F.3d 1295, 1302 (10th Cir. 2013) (quoting *In re Taylor*, 133 F.3d 1336, 1341 (10th Cir. 1998)).

should not be known that he was purchasing the property;' and (2) 'that the payor manages the property, collects rents, pays taxes and insurance, pays for repairs and improvements, or otherwise asserts ownership, and the acquiescence by the transferee in such assertion of ownership.'[140]

The undisputed material facts demonstrate that T.J. Enterprises does not have a beneficial interest in the Subject Property through a purchase money resulting trust. GPI entered into a contract with RDLC Management to purchase the Subject Property for $310,000. T.J. Enterprises was not a party to the contract. It is undisputed that T.J. Enterprises did not pay the initial down payment (directly or indirectly) and was not obligated on the RDLC Management Note. While T.J. Enterprises paid a significant portion of the Note directly to the lender, such payments were made in the form of rent payments under a lease contract with GPI. If T.J. Enterprises had failed to make a payment, T.J. Enterprise would have been liable to GPI on the lease contract and GPI would have been liable to RDLC Management on the Note. T.J. Enterprises did not in fact or effectively purchase the Subject Property and never held title to the Subject Property. Under these facts, a resulting trust did not arise to make T.J. Enterprises the beneficial owner of the Subject Property. Therefore, GPI is entitled to summary judgment on Counts II and III of the Complaint.

**Because T.J. Enterprises does not have a legal interest in the Subject Property, the United States is not entitled to foreclose the tax liens against the Subject Property.**

Because T.J. Enterprises does not have a legal interest in the Subject Property under Utah law, the United States has failed to identify a "property" or "right to property" subject to the federal tax lien statute. Therefore, the liens against the Subject Property are invalid and summary judgment is granted in favor of GPI on Count V of the Complaint.

---

[140] *Id.* (quoting Restatement (Second) of Trusts § 443 cmt. a).

**Issues regarding the Deed of Trust assigned to Linda Gurule are moot.**

In Count IV, the United States seeks to set aside the Deed of Trust assigned to Linda Gurule.[141] Because the United States is not entitled to foreclose its liens on the Subject Property, the validity of the Deed of Trust assigned to Linda Gurule no longer has any impact in this matter and need not be resolved. Therefore, the United States' request to set aside the Deed of Trust is denied as moot.

## ORDER

IT IS HEREBY ORDERED that the U.S. Motion for Summary Judgment[142] is GRANTED IN PART and DENIED IN PART. The following relief is entered in favor of the United States:

(1) Summary Judgment is entered in favor of the United States on Count I of the Complaint.

(2) Judgment is entered against T.J. Enterprises in the amount of $2,711,768.64, as of April 28, 2017, plus statutory interest and other statutory additions pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c), until the balance is paid.

(3) Savage Scaffold & Equipment, Inc., RDLC Management, State of Utah, Tax Commission, State of Utah, Department of Workforce Services—based on their disclaimers of interest—and Checkline, Inc. d/b/a Check Max, and New Hampshire Insurance Company, a member company of American International Group—based on their defaults—have no interest in the Subject Property.

---

[141] Complaint at 17.

[142] Docket no. 61.

IT IS FURTHER ORDERED that the Gurule Motion for Summary Judgment[143] is

GRANTED IN PART and DENIED IN PART. The following relief is entered in favor of GPI:

(1)     Summary Judgment is entered in favor of GPI on Counts II, III, and V of the

Complaint.

IT IS FURTHER ORDERED that Count IV of the Complaint DENIED as moot.

The clerk of the court is directed to close the case.

Dated May 31, 2019.

BY THE COURT:

David Nuffer
United States District Judge

---

[143] Docket no. 64.